UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:21-cr-00192-JAW |
| | ) | |
| PATRICK HANSON | ) | |

**ORDER ON SENTENCING**

A defendant has pleaded guilty to possessing with intent to distribute a controlled substance and the parties dispute whether he should be sentenced as a career offender. The disagreement centers on whether the defendant's 2017 state conviction on drug charges qualifies as a "controlled substance offense" under the career offender guideline. The Court concludes that the conviction does qualify under the guideline because the *Shepard* documents make clear that the defendant was prosecuted for distribution, rather than mere possession of a controlled substance or possession of a sufficient quantity of fentanyl to be statutorily deemed to be trafficking. Accordingly, the defendant qualifies as a career offender for sentencing.

**I.   BACKGROUND**

   **A.   Procedural Background**

On December 6, 2021, a federal grand jury indicted Patrick Hanson for possession with intent to distribute a controlled substance, fentanyl, in violation of 21 U.S.C. § 841(a)(1). *Indictment* (ECF No. 1). On October 13, 2022, Mr. Hanson pleaded guilty to the single charge contained in the indictment. *Am. Plea Agreement* (ECF No. 40).

On April 19, 2023, the Government filed a sentencing memorandum contending that Mr. Hanson qualified as a career offender under U.S.S.G. § 4B1.1. *Gov't's Sentencing Mem.* (ECF No. 53) (*Gov't's Mem.*). On May 5, 2023, Mr. Hanson filed a memorandum countering that he did not qualify. *Def.'s Legal Mem. in Aid of Sentencing* (ECF No. 55). (*Def.'s Mem.*). Finally, on May 10, 2023, the Government filed a reply memorandum. *Gov't's Reply Sentencing Mem.* (ECF No. 56) (*Gov't's Reply*).

B.  The Factual and Legal Background

1.  Requirements for Career Offender Status

Pursuant to § 4B1.1(a) of the Sentencing Guidelines, a defendant qualifies as a career offender, subject to an enhanced sentence, if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
>
> (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and
>
> (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The Guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

2

### 2. Maine Drug Trafficking Convictions as "Controlled Substances Offense[s]"

Maine law provides that a person is guilty of unlawful trafficking in scheduled drugs "if the person intentionally or knowingly trafficks in what the person knows or believes to be a scheduled drug, which is in fact a scheduled drug. . .." 17-A M.R.S. § 1103(1-A). In 2017, it defined "traffick" as:

> A. To make, create, manufacture;
>
> B. To grow or cultivate, except for marijuana;
>
> C. To sell, barter, trade, exchange or otherwise furnish for consideration;
>
> D. To possess with the intent to do any act mentioned in paragraph C;
>
> E. To possess 2 grams or more of heroin or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing heroin; or
>
> F. To possess 2 grams or more of fentanyl powder or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing fentanyl powder.

17-A M.R.S. § 1101(17), *amended* by PL 2015, ch. 346, § 1 (effective Oct. 15, 2015).[1]

The Court of Appeals for the First Circuit addressed the circumstances where Maine state drug trafficking convictions under 17-A M.R.S. § 1103(1-A) may qualify as "controlled substances offense[s]" in *United States v. Mulkern*, 854 F.3d 87 (1st Cir. 2017) and *United States v. Mohamed*, 920 F.3d 94 (1st Cir. 2019).

In *Mulkern*, the First Circuit analyzed whether the defendant's prior conviction under Maine's drug trafficking statute qualifies as a "serious drug offense"

---

[1] In 2021, this section was amended to repeal subsections (E) and (F) from the definition of "traffick." *See* PL 2021, ch. 396, § 1 (effective Oct. 17, 2021).

under the Armed Career Criminal Act (ACCA). 854 F.3d at 95-97. The First Circuit explained that "some state statutes—a.k.a., 'divisible' statutes—lay out elements in the alternative, and thereby define multiple crimes" and in these situations, courts employ the "modified-categorical approach" to determine whether the state offense satisfies the federal requirement. *Id.* at 90-91 (citation and internal quotation marks omitted). Under the modified-categorical approach, "the court looks beyond the statute of conviction to a narrow 'class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)'—known as *Shepard* documents— 'to determine what crime, with what elements, a defendant was convicted of.'" *Id.* at 91 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

Brian Mulkern had been convicted of drug trafficking in 2004 under 17-A M.R.S. § 1103. *Id.* at 94. The ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance. . ., for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* at 90 (quoting 18 U.S.C. § 924(e)(2)(A)(ii)). The dispute centered on whether his conviction qualified as a serious drug offense under the ACCA by "involving" possession of a controlled substance "with intent to manufacture or distribute." *Id.*

As quoted above, for purposes of the First Circuit's analysis, the Maine drug trafficking statute established two subcategories of conduct. The first category sets forth violations under subsections A through D, which are provable by demonstrating that the defendant manufactured, grew, sold, or possessed with the intent to

4

manufacture, grow or sell a controlled substance. 17-A M.R.S. § 1101(1-A)(A)-(D). For two controlled substances, heroin and fentanyl, the statute provided that the mere possession of a specific drug quantity would be deemed trafficking. 17-A M.R.S. § 1101(1-A)(E)-(F).

Mr. Mulkern contended that "the pertinent trafficking statute—dealing with the 2 grams or more of heroin—criminalizes possession with *no* intent to manufacture or distribute" and instead only requires "that the possessor possessed the requisite amount of heroin—and nothing in the *Shepard* documents, he [wrote], shows he pled guilty to intending to manufacture or distribute heroin either." *Id.* at 94-95 (emphasis in *Mulkern*).

The First Circuit agreed with Mr. Mulkern, applying the modified-categorical approach and finding that the statute's minimum threshold of 2 grams of heroin or more was "not so large that the *only* reasonable inference is that one who possesses that amount must intend to distribute it." *Id.* at 97 (emphasis in *Mulkern*). This is particularly true, since as the First Circuit observed, the Maine Supreme Judicial Court had concluded that a defendant need not possess two grams or more or heroin but two grams or more of a "*any mixture containing heroin*." *Id.* (*State v. Pinkham*, 137 A.3d 203, 2016 ME 59, ¶ 15) (emphasis in *Mulkern*). Absent any further evidence that he intended to manufacture or distribute drugs, Mr. Mulkern's conviction fell

short of the ACCA's definition of "serious drug offense" as possession "with intent to manufacture or distribute."[2] *Id.* at 97 (citation omitted) (emphasis in *Mulkern*).

In *Mohamed*, the First Circuit considered whether a defendant's prior conviction under 17-A M.R.S. § 1103 qualified as a "controlled substance offense" as defined by U.S.S.G. § 4B1.2(b). 920 F.3d 94. Noor Mohamad had been convicted in 2014 of trafficking cocaine base. *Id.* at 99. As quoted above, cocaine base was not treated under Maine statutory law the way heroin and fentanyl were. The possession of a certain quantity of cocaine base was not itself a trafficking offense, but Maine law allowed a "permissible inference" regarding trafficking, based on the quantity of particular drugs possessed by a defendant, and for cocaine base, possession of four grams or more triggered the permissive inference of distributive intent. *Id.* at 100 (quoting 17-A M.R.S. § 1103(3)). Significantly, however, to prosecute a defendant for trafficking cocaine base, the State "cannot be required to invoke the presumption of section 1103(3) when the evidence which it presents makes reliance upon the presumption unnecessary." *Id.* (quoting *State v. Peakes*, 440 A.2d 350, 355 (Me. 1982)).

Mr. Mohamed contended that his conviction was grounded in this permissive inference and that "such an amount is not enough to raise a rational inference of intent to distribute, as required for a 'controlled substance offense.'" *Id.* at 102. Applying the modified-categorical approach, the First Circuit examined the *Shepard*

---

[2] The *Mulkern* Court wrote that, even assuming *arguendo*, that, under some circumstances, possession of a sufficiently large quantity of drugs could infer distributive intent, it concluded that in the *Mulkern* case "the crime for which Mulkern stands convicted would not come close to raising this inference." *Id.* at 97.

6

documents and rejected Mr. Mohamed's claim, finding that the Government did not invoke the permissible inference. It observed that "[i]n discerning which portion of a divisible statute is involved, the facts that the government said it would have sought to prove at trial demonstrate the portion of the divisible statute under which the State proceeded" and, rather than relying on the permissible inference, "State prosecutors made clear the plea was to intentional trafficking." *Id.* at 102-03.

The First Circuit found that Mr. Mohamed's conviction rested "on the definition in Section 1101(17)(D) ('To possess with the intent to do any act mentioned in paragraph C [sell, barter, trade, exchange or otherwise furnish for consideration])'" and thus qualified as a "controlled substance offense." *Id.* at 104 (quoting 17-A M.R.S. § 1101(17)(D)). It noted that "the *Shepard* documents establish that Mohamed's Maine conviction rested on intentional distribution, to which he pled. The elements of the statute at issue -- when taking into account the definitions of 'traffick' relevant here, *see* Me. Stat. tit. 17–A, § 1101(17)(C)-(D) -- include intent to distribute." *Id.* The *Mohamed* Court concluded that "[a]gain, the statutory elements here closely track the 'controlled substance offense' definition in the Guidelines . . . Mohamed's Maine conviction is properly a 'controlled substance offense' under the Guidelines." *Id.*

### 3. Patrick Hanson's Background and 2017 Drug Trafficking Conviction

Mr. Hanson was 30 years old at the time of the instant federal drug offense. *Revised Presentence Report* at 2, ¶¶ 4-10 (ECF No. 46) (*PSR*). In 2012, he was convicted in federal court on a charge of conspiracy to possess with intent to distribute and distribution of oxycodone and 500 grams or more of cocaine. *Id.* ¶ 40. In 2017,

7

he was convicted in Maine state court of unlawful trafficking in scheduled drugs. *Id.* ¶ 42. The parties dispute only whether the 2017 conviction qualifies as a "controlled substance offense" for the purposes of triggering career offender status.

On November 2, 2017, a Kennebec County, Maine grand jury indicted Mr. Hanson on one count of unlawful trafficking of scheduled drugs, one count of unlawful possession of scheduled drugs, and one count of criminal forfeiture. *Indictment dated Nov. 2, 2017,* State of Maine v. Patrick Hanson*, Kenn. County Superior Court, Docket No. KENCD-CR-17-1579* (ECF No. 58) (*2017 Indictment*). The indictment contained three charges: Count One, Unlawful Trafficking of Scheduled Drugs, Count Two, Unlawful Possession of Scheduled Drugs, and Count Three, Criminal Forfeiture. Count One, the unlawful trafficking charge, read:

> **COUNT 1:**          **17-A M.R.S.A. § 1103(1-A)(A)**
> **Seq. No. 8541**
> **UNLAWFUL TRAFFICKING OF SCHEDULED DRUGS**
> **CLASS B**
> **ATNCTN 233494B001**
>
> On or about July 17, 2017, in Waterville, Kennebec County, Maine, **PATRICK DAVID HANSON**, did intentionally or knowingly traffick in what he knew or believed to be a scheduled drug, which was in fact fentanyl, a schedule W drug.

*Id.* at 1. Since the indictment cites § 1103(1-A)(A), the "make, create, or manufacture" language, the indictment suggests but not does conclusively demonstrate that the State was not proceeding against Mr. Hanson under § 1103(1-A)(F).

8

On December 14, 2017, Mr. Hanson pleaded guilty to this charge.[3] The State Judgment and Commitment refers to Count One as a Class B offense and the violation being to 17-A M.R.S. § 1103(1-A)(A). ECF No. 58, Attach. 1, *State v. Hanson, Judgment and Commitment* at 1.

The plea colloquy on December 14, 2017, in relevant part, proceeded as follows:

The Court: Will the State please summarize the evidence?

The Prosecutor: Your Honor, in docket number 17-1579, if this matter were to go to trial, the State would present evidence primarily in the form of the investigating detective, Duane Cloutier, as well as a [confidential informant] and other members of the Waterville Police Department that on July 17th, an individual working with the detective, identified as a confidential informant, did, according to the standard procedure with the detective, made a controlled buy of what they believed was a controlled substance from the defendant that was observed by officers in Waterville. The item was recovered from the CI, tested positive, and came back as fentanyl. At this point, the defendant has been indicted.
. . .
The Court: All right. Mr. Hanson, did you hear what the State's attorney had to say about the evidence they think they could bring to court on the felony charge?

Mr. Hanson: Yes, ma'am.

The Court: All right. And do you disagree in any significant way with what he said about what happened?

Mr. Hanson: No, ma'am.

The Court: Are you pleading guilty to these charges because you are, in fact, guilty?

Mr. Hanson: Yes, ma'am.

---

[3] Mr. Hanson also pleaded guilty to the count of Criminal Forfeiture, which is not relevant to the issue at hand. *Id.* at 2; ECF No. 58, Attach. 2, *J. and Commitment dated December 14, 2017* (*2017 J.*).

ECF No. 58, Attach. 2, *Rule 11 Hearing, December 14, 2017* at 5:20-6:22 (*Plea Colloquy*).

## II.   THE PARTIES' POSITIONS

### A.   The Government's Memorandum

The Government asserts that "the defendant's 2017 Maine Trafficking conviction is a 'controlled substance offense' because the *Shepard* documents demonstrate that the defendant was convicted of trafficking under [17-A M.R.S.] § 1101(17)(C) or (D), as opposed to the mere possession offense in former subsection (F)." *Gov't's Mem.* at 7. Consequently, "[b]ecause the defendant's conviction involved the intentional distribution of fentanyl, it serves as a predicate offense to elevate the defendant to career offender status" and "[t]hus, the Government requests that the Court sentence the defendant as a career offender." *Id.*

Summarizing the *Shepard* documents, the Government offers that: (1) the Indictment and Judgment show "the defendant was charged with intentionally or knowingly trafficking in fentanyl, and there is no allegation that the defendant possessed a certain quantity of fentanyl to trigger the presumption in subsection (F)"; (2) the plea colloquy shows that "the evidence against the defendant involved the defendant's sale of fentanyl to a confidential informant while law enforcement observed the transaction"; and (3) "[t]he state does not reference the weight of the drugs involved or the presumption in subsection (F) at all" and "there is no evidence in this case that the defendant's conviction rested on the presumption in subsection (F) relating to the quantity of fentanyl possessed." *Id.* at 9-10.

### B. Patrick Hanson's Memorandum

Mr. Hanson generally agrees with the Government on the appropriate legal framework, but counters that "[w]hen looking to the *Shepard* documents provided by the Government, the documents fail to provide a basis for finding that Mr. Hanson's conviction in [2017] qualifies as a 'controlled substance offense.'" *Def.'s Mem.* at 6. He asserts that indictment and judgment are vague, providing only the general statute of conviction rather than a specific subsection, and thus "do not provide a sufficient basis to establish under what theory Mr. Hanson's conviction is based." *Id.* at 7.

Mr. Hanson focuses primarily on the plea colloquy, submitting that "the transcript does not provide a sufficient basis for the state conviction to qualify as a predicate 'controlled substance offense.'" *Id.* He submits that the state court asked if he "disagreed in any significant way" with what was said, not whether the allegations were true, and this "Rule 11 inquiry does not align with the level of acceptance that is present when a defendant pleads guilty before this federal court." *Id.* at 8. Mr. Hanson offers further that in the colloquy he "never makes clear the facts that he was accepting and how he was admitting to have violated Title 17-A M.R.S. § 1103(1-A)(A)" and "[w]ithout a clear theory of guilt admitted to by Mr. Hanson, the transcript cannot be used to establish that Mr. Hanson's conviction meets the requirements of a predicate 'controlled substance offense.'" *Id.*

### C. The Government's Reply Memorandum

The Government responds that, "[c]ontrary to the defendant's contentions, courts review *Shepard* documents 'not to determine the facts presented or admitted

to by the defendant, . . . but to discern on which portion of the divisible statute the State charged and proceeded.'" *Gov't's Reply* at 1 (quoting *Mohamed*, 920 F.3d at 102) (alterations in *Gov't's Reply*). It adds that "a court's review in this situation is a narrow one and is 'not to determine what the defendant and state judge must have understood as the factual basis of the prior plea'" but, rather, to "'determine which statutory phrase was the basis for the conviction.'" *Id.* at 2 (quoting *Descamps v. United States*, 570 U.S. 254, 262-263 (2013)).

### III.  DISCUSSION

The issue before the Court is narrow and straightforward. The parties agree that Maine's trafficking statute is divisible and that the Court's task is to—following the First Circuit's guidance in *Mulkern* and *Mohamed*—apply the modified-categorical approach and examine the *Shepard* documents to determine whether Mr. Hanson's 2017 conviction meets the standard for a "controlled substance offense." The Government submits that the *Shepard* documents show that Mr. Hanson was convicted "of trafficking under [17-A M.R.S.] § 1101(17)(C) or (D), as opposed to the mere possession offense in former subsection (F)." *Gov't's Mem.* at 7. Mr. Hanson counters that his "state court plea colloquy does not advance, by him or by the court, a theory upon which his conviction is based." *Def.'s Mem.* at 9. In his view, it is ambiguous which subsection he was convicted under, and the possibility that he was convicted for mere possession under subsection (F) should prevent the Court from finding that his conviction qualifies as a controlled substance offense for the reasons

12

stated in *Mulkern*. *Id.* at 8-9. After reviewing the *Shepard* documents, the Court finds that the Government has the better argument.

In *Mohamed*, the First Circuit clarified:

> Our decision in *Mulkern* is clearly distinguishable from this case. In *Mulkern* we held, among other things, that the defendant's Maine drug trafficking conviction did not qualify as an ACCA predicate "serious drug offense" because intent to distribute could not be inferred from the title of the Maine trafficking statute nor from merely possessing two grams or more of heroin. 854 F.3d at 96. There, the defendant had pleaded guilty to trafficking in Maine in 2004, based on the provision of the Maine trafficking statute containing a statutory presumption of trafficking in subsection (E) based only on the amount, either in grams or receptacles, of heroin possessed ("To possess 2 grams or more of heroin or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing heroin," Me. Stat. tit. 17–A, § 1101(17)(E)). *Mulkern*, 854 F.3d at 94. The trafficking provision at issue in *Mulkern* does not require that the government prove any other element of intent, such as the intent to "sell, barter, trade, exchange or otherwise furnish for consideration," Me. Stat. tit. 17–A, § 1101(17)(C)-(D); it must only show mere possession of a set amount of heroin or receptacles containing heroin.
>
> In *Mulkern*, then, this court addressed arguments concerning the inference of trafficking from the title of a statute, and presumption of illegality from drug quantity or containers alone, neither of which are presented here. That is, distributive intent was not a necessary element of the portion of the crime to which the defendant in *Mulkern* pleaded guilty. In contrast, the crime to which Mohamed pleaded guilty did require distributive intent, as demonstrated in the plea colloquy, a permissible *Shepard* document.

920 F.3d at 104-05. This distinction is instructive, and the Court finds Mr. Hanson's conviction to fit within *Mohamed*, not *Mulkern*.

As quoted above, Maine's trafficking statute at the time of Mr. Hanson's conviction defined "traffick" as:

A. To make, create, manufacture;

> B. To grow or cultivate, except for marijuana;
>
> C. To sell, barter, trade, exchange or otherwise furnish for consideration;
>
> D. To possess with the intent to do any act mentioned in paragraph C;
>
> E. To possess 2 grams or more of heroin or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing heroin; or
>
> F. To possess 2 grams or more of fentanyl powder or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing fentanyl powder.

17-A M.R.S. § 1101(17), *amended* by PL 2015, ch. 346, § 1 (effective Oct. 15, 2015). The Government argues that Mr. Hanson was convicted under subsection (C) or (D), while Mr. Hanson insists that the *Shepard* documents are ambiguous, and he may have been convicted under subsection (F). A review of the *Shepard* documents clearly supports the Government's position.

Since the indictment cites § 1103(1-A)(A), the "make, create, or manufacture" language, the indictment suggests but not does conclusively demonstrate that the State was not proceeding against Mr. Hanson under § 1103(1-A)(F). The State Judgment and Commitment cites 17-A M.R.S. § 1103(1-A)(A), the "make, create, manufacture" language, not § 1103(1-A)(F).

Even allowing the possibility of ambiguity from the indictment and the Judgment and Commitment, the plea colloquy, a permissible *Shepard* document, resolves which subsection of § 1103(1-A), the State was proceeding under. During Mr. Hanson's plea colloquy, the state offered as the sole reason for conviction that a confidential informant "made a controlled buy of what they believed was a controlled

14

substance from the defendant that was observed by officers in Waterville" and "[t]he item was recovered from the CI, tested positive, and came back as fentanyl." *Plea Colloquy* at 5:21-6:7. This proffer by the state clearly indicates that it charged Mr. Hanson for *selling* fentanyl, rather than merely possessing it, thus pointing to subsection (C) ("To sell, barter, trade, exchange or otherwise furnish for consideration") rather than (F).

Furthermore, to prove a case under subsection (F), the Government would have been required to present evidence that Mr. Hanson "possess[ed] 2 grams or more of fentanyl powder or 90 or more individual bags . . . containing fentanyl powder." 17-A M.R.S. § 1103(1-A)(F). While the evidence offered by the state at the Rule 11 hearing supports a conviction for selling fentanyl under subsection (C), the state prosecutor made no mention of subsection (F), and failed to mention a critical element of a subsection (F) conviction—the quantity of fentanyl and evidence that the quantity satisfied the subsection's minimum threshold of 2 grams or 90 individual bags of fentanyl. Here, the state superior court justice concluded that the evidence proffered by the prosecutor was "sufficient to support the charges", a finding she could not have made if the state had been proceeding under subsection (F). *Plea Colloquy* at 10:10-11.

Mr. Hanson offers no affirmative evidence that he was charged under subsection (F). Instead, he primarily relies on the assertion that "Mr. Hanson never makes clear the facts that he was accepting and how he was admitting to have violated Title 17-A M.R.S. § 1103(1-A)(A)" and [w]ithout a clear theory of guilt

15

admitted to by Mr. Hanson" the transcript does not establish the element of a controlled substance offense. *Def.'s Mem.* at 8. The First Circuit, however, clarified in *Mohamed* that "we look to the plea colloquy here not to determine the facts presented or admitted to by the defendant, but to discern on which portion of the divisible statute the State charged and proceeded." 920 F.3d at 102 (citation and internal quotations omitted). "It is undisputed that the 'brute facts' of the crime, are not relevant to this case" and "[i]n discerning which portion of a divisible statute is involved, the facts that the government said it would have sought to prove at trial demonstrate the portion of the divisible statute under which the State proceeded." *Id.* Mr. Hanson's focus on the full scope of what he did or did not admit is a dead end, as the plea colloquy clearly indicates that the state prosecuted him for selling fentanyl, rather than merely possessing it or possessing a sufficient amount to be deemed to have trafficked.

Mr. Hanson's conviction qualifies as a controlled substance offense for the same reason as Mr. Mohamed's. In *Mohamed*, distributive intent was inferred from circumstantial evidence because Mr. Mohamed had not yet sold the drugs. 920 F.3d at 103 (inferring distributive intent from the prosecutor's assertion that the drugs were packaged for distribution and the defendant possessed drug proceeds and firearms). Here, however, the Court need not infer distributive intent because the Government prosecuted Mr. Hanson for actually selling fentanyl to an informant. The First Circuit concluded that (1) "the *Shepard* documents establish that Mohamed's Maine conviction rested on intentional distribution, to which he pled"; (2)

16

"[t]he elements of the statute at issue -- when taking into account the definitions of "traffick" relevant here, *see* Me. Stat. tit. 17–A, § 1101(17)(C)-(D) -- include intent to distribute"; and, thus (3) "Mohamed's Maine conviction is properly a 'controlled substance offense' under the Guidelines." *Id.* at 104.

The Court concludes the same here. The *Shepard* documents establish that Mr. Hanson's 2017 conviction relied on intentional distribution, to which he pleaded. The elements of the statute at issue, 17-A M.R.S. § 1101(17)(C)-(D), include intent to distribute, and thus, Mr. Hanson's conviction is properly a "controlled substance offense" under the sentencing guidelines.

## IV. CONCLUSION

The Court concludes that Patrick Hanson's 2017 Maine conviction is a "controlled substance offense" as defined in U.S.S.G. § 4B1.2(b). Because Mr. Hanson was at least eighteen years old at the time of the instant offense, the instant offense was a controlled substance offense, and he has two prior felony convictions for controlled substance offenses, he qualifies as a career offender under § 4B1.1(a). Accordingly, the total offense level is increased to 34 and Mr. Hanson's criminal history is category VI. This conclusion will require a new guideline calculation for Mr. Hanson.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of June, 2023